IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CLIFTON T. KASPER,** | 1:11-CV-03084 RE |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MICHAEL J. ASTRUE,**<br>Commissioner of Social Security, | |
| Defendant. | |

**REDDEN**, Judge:

Plaintiff Clifton Kasper ("Kasper") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Title II benefits. For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

/ / /

1 - OPINION AND ORDER

## BACKGROUND

Born in 1961, Kasper completed high school, and has worked as a church pastor and plumber. In July 2008, Kasper filed an application for SSI benefits, alleging disability since June 1, 2008. Tr. 142, 147. His application was denied initially and upon reconsideration. After a May 2010 hearing, an Administrative Law Judge ("ALJ") found him not disabled. Kasper's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Kasper had the medically determinable severe impairments of cerebral vascular accident/transient ischemic attack, with residual mild speech dysfunction and executive function deficit resulting in cognitive disorder, status post patent foramen ovale ("PFO") closure, obesity, hypertension, sleep apnea, right cholesteatoma, cervical spine degenerative disease, right shoulder arthritis, and degenerative joint disease in the hips. Tr. 15.

The ALJ found that Kasper's impairments did not meet or equal the requirements of a listed impairment.

The ALJ determined that Kasper retained the residual functional capacity to perform a limited range of light work.

The ALJ found that Kasper was able to return to his past relevant work and retained the ability to work as a companion, dispatcher, and telephone answering service operator. Tr. 20-21.

The medical records accurately set out Kasper's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are

familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Kasper contends that the ALJ erred by: (1) failing properly to weigh medical evidence; (2) finding him not fully credible; and (3) failing to credit lay testimony.

### I. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Philipp Olshausen, M.D.

Dr Olshausen began treating Kasper in June 2008. Tr. 375. Kasper reported being "nearly fully recovered" from his August 2007 stroke. Tr. 376. On January 5, 2010, Kasper reported fatigue "ongoing since the stroke." Tr. 520. Dr. Olshausen noted there was "no definite reason" for fatigue based on Kasper's laboratory results. Tr. 521. On the same date, Dr. Olshausen issued a "to whom it may concern" letter stating that Kasper "has been suffering from ongoing fatigue which is making it impossible for him to return to full-time work." Tr. 522.

The ALJ noted Dr. Olshausen's letter, and stated that "there is no objective evidence for this statement other than the claimant's sleep apnea and obesity and one subjective complaint of fatigue. I therefore give it little weight." Tr. 19. The ALJ properly gave little weight to this brief, conclusory and unsupported statement. *Bayliss,* 427 F.3d at 1216.

### B. Michael Villanueva, Psy. D.

Dr. Villanueva examined Kasper in October, 2008, to assess the residual effects of the 2007 stroke. Tr. 391-98. Kasper reported that he took care of his household, his ill wife, and special needs child. Tr. 395. Kasper reported "word finding difficulties on occasion," but Dr. Villanueva noted no expressive or receptive aphasia on examination. Tr. 394. Testing indicated that Kasper's verbal and semantic fluency were below normal limits. Dr. Villanueva stated that "[l]exical and semantic dysfluency could interfere with duties as a pastor with resulting hesitancy and poor word finding." Tr. 395.

The ALJ gave Dr. Villanueva's opinion "some weight, although I do not find that mild cognitive impairments such as the ones assessed interfere as substantially in the claimant's ability to find work." Tr. 18-19. The ALJ included the reported history of word-finding difficulty into Kasper's residual functional capacity as a mild residual speech dysfunction and mild cognitive impairment resulting in mild deficits in word-finding. Tr. 17.

Kasper argues that Dr. Villanueva's opinion establishes that he cannot return to work as a church pastor. The court must defer to an ALJ's rational interpretation of conflicting evidence. *Burch v. Barnhart,* 400 F.3d 676, 680-81 (9th Cir. 2005).

Moreover, the ALJ made alternative findings, identifying other work that Kasper was capable of performing, including companion, dispatcher, and telephone answering service operator. Tr. 21.

## II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

///

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282.

The ALJ found that Kasper's allegations as to the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they are inconsistent with the RFC assessment. Tr. 41. Kasper testified that the main reason that he cannot work is fatigue. Tr. 57. He stated that after an hour or two of activity he has to take a break, and often a nap. Tr. 58. Kasper said that he has trouble with his short-term memory. Tr. 57.

As discussed above, Kasper's allegations of disabling fatigue are not documented in the medical record. In addition, the ALJ found that Kasper's daily activities contradict his allegation of disabling fatigue. The ALJ noted that Kasper performs organizational chores for the church, runs his household and cares for his ill wife and two children. Tr. 18. The ALJ may cite a claimant's activities of daily living, and this court must defer to the ALJ's interpretation of such activities where more than one reasonable interpretation of those activities may arise. *Rollins v. Massinari,* 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's reliance upon Kasper's activities of daily living, and the lack of medical evidence, in finding him not fully credible is affirmed.

///

///

## III. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ considered the July 2008 Third Party Function Report completed by Kasper's mother, Faye Kasper. Tr. 17-18. Ms. Kasper reported that she helps her son with housework several times a week. Ms. Kasper noted that her son does daily housework, laundry, and some cleaning, and cares for his partially disabled wife and two sons. She stated that Kasper had been a pastor and part-time plumber but "could no longer handle the responsibility." Tr. 157. She wrote that since the stroke "he can not handle the jobs and care for his partially disabled wife and boys." Tr. 163.

///

///

///

Ms. Kasper's statement does not describe disabling symptoms. The only functional limitations she identifies are a reduced ability to do math, and a general description that Kasper is "slower." Tr. 160. The ALJ properly considered and weighed Ms. Kasper's statement.

## **CONCLUSION**

For the above reasons, the Commissioner's decision is affirmed and this matter is dismissed.

IT IS SO ORDERED.

Dated this 24 day of August, 2012.

JAMES A. REDDEN
United States District Judge

8 - OPINION AND ORDER